Case number 24-5050, Yanping Chen v. Federal Bureau of Investigation, Catherine Herridge, appellants. Mr. Philbin for the appellant, Mr. Phillips for appellate Yanping Chen. Mr. Philbin, good morning. Good morning, Your Honor. Please be mindful we're in open court. We will have a chance to discuss the sealed material with you later. Yes, thank you, Your Honor. I'm Philbin for appellant Catherine Herridge, and I've asked to reserve three minutes of my time for rebuttal. Your Honor, in ordering Ms. Herridge to disclose her confidential sources to plaintiffs and then subsequently holding Ms. Herridge in contempt, the district court flatly misapplied this court's decision in Zerilli v. Smith. That's the decision which this court outlined how the First Amendment journalist privilege applies to protect confidential sources, and really the central question in this appeal is the nature of the test set by Zerilli. So this morning, first, I'd like to address Zerilli, explain that it calls for a genuine balancing test and one that is heavily weighted to ensure that the First Amendment privilege prevails in almost all cases, and then to address here how properly applied that balancing test shows that the subpoena to Ms. Herridge should have been quashed and the order of contempt should be reversed. I want to raise the podium or speak down a little. You're fading in and out a little bit. Sorry, Your Honor. I was going to say, do we need to require the balancing test or just not prohibit it? I think it is required. It is the test that was set by Zerilli. The court's language in Zerilli was... But Zerilli was followed up by Lee. Yes, and in Lee, Your Honor, the court had a truncated analysis, but I think that saying that the analysis can end without that balancing is inconsistent with Zerilli. Zerilli, where is Lee saying? You're ignoring Lee, and by saying that it's truncated is not a compelling argument, at least from my view. Lee pretty clearly, I think, you're suggesting. I'm not even sure I understand what it is, but let's assume that a reference to balancing can be described in a meaningful way. I'm not sure where Zerilli says that is the case must be and where Lee says something that's consistent with that. In Zerilli, Your Honor, the court said that to determine whether the privilege applies, courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure. So it is calling for a balancing of interest. And they talked about centrality and exhaustion. It did. Explaining what they mean the court should do, and that's exactly the way Lee read it. It was a really tough. I understand. I knew what you were going to refer to. The first thing they said was kind of a general sweep. Then we as judges mean to often try and explain what we mean by that kind of general sweep, and they did. Centrality and exhaustion in the later cases clearly follow that as the test. That is the way we've applied precedent. Your Honor, in Zerilli the court expressly reserved in footnote 52, the court in Zerilli pointed out, yes, the information here is central, but the plaintiff hasn't exhausted. But then it dropped a footnote to say, even if you had exhausted, we're not saying that means you would get access to the sources. And here's, I think, the critical thing in a Privacy Act case like this. If Zerilli is reduced to just centrality and exhaustion, the identity of the confidential source is always central in a Privacy Act case. So that means Zerilli is nothing but exhaustion. Again, you're reading away from Lee. That isn't the way we operate. Well, your Honor. Zerilli is a starting point. Lee picks it up and explains what the law of the circuit is. To the extent that Lee is inconsiderate. The footnote, again, that's why some of us don't use them. I don't know what that shows, quite honestly. It just doesn't. Your Honor. It's kind of a laughable footnote, really. It says nothing. But we do that sometimes because we're nervous when we're writing. So we say something, but then when the next panel reads it, having the faintest idea what that means. When Zerilli is followed by Lee, Lee clearly says, we have a two-part test, and that's what Zerilli said. Well, your Honor, with respect, Lee applies a two-part test. It does not discuss whether there is any further balancing. It's not as if the court said, people have argued for balancing, and we reject that. And I think that's reflected in the fact that Judge Rogers, who was on the panel in Lee, joined those voting for rehearing on Bonk. And he wrote a short opinion saying, this is really the first case since Zerilli where we've been called upon to describe what Zerilli means. And there's more to be addressed here, and we should take this case on Bonk. Was Bonk granted? It was not by an equally divided vote. We have to rely on Lee and Zerilli. That's true, Your Honor. But the law of this circuit is that if there is a conflict between them, the earlier decision, Zerilli is what governs. And here's the critical conflict. In Zerilli, the court said multiple times, not just once, but on five distinct points, the court said in Zerilli that in the ordinary case, the civil litigants' interest in disclosure should yield to the journalist's privilege. And again, it said that cases in which the First Amendment rights should yield are few in number, and that an interest sufficiently compelling to override the privilege will be rare. And again, that the privilege should be overridden only in rare circumstances. But if you reduce Zerilli to central... That's all fine, but you know, I do occasionally use footnotes, and I take footnote 52 to actually be very important, but very harmful to you, because it says we are reserving the question, what happens when there is centrality and exhaustion, right? The reporter wins because there's no exhaustion. The court specifically reserves the question, what happens when there is centrality and exhaustion? And Lee holds that centrality plus exhaustion is sufficient to override the privilege. But in Zerilli, here is the conflict, Your Honor. In Zerilli, the court made clear that the privilege has to prevail in the ordinary case. What Lee, by truncating the analysis, essentially says is the privilege loses in every Privacy Act case. Eventually, every litigant, doesn't matter how small their claim is, doesn't matter whether they're going to succeed on summary judgment or not. If they have a Privacy Act claim, and they need the information and can't get it elsewhere, the First Amendment privilege always loses. That's directly... To the fact that the court did the balancing in this case, and then gets itself to the same outcome. Because Your Honor, the court was very clear that it was not providing an alternative holding and doing it a definitive balancing. When we attempted to seek an interlocutory appeal, that was the argument that plaintiffs made to the court, was they don't need an appeal, you've already done the balancing. And the court expressly denied that. This is at page 242 of the joint appendix. The court said, well, to the extent that I looked at the likely outcome of balancing, that was quote, far from conclusive. So he was not offering an alternative holding. And he went on to say, it remains possible that any refinement of the applicable test by the circuit on appeal would alter the result. So the district court has not provided a definitive balancing that it views as... And what is the balancing test to you? It's that you always win on the First Amendment claim. But you're just flipping it. You're saying if you do it the way you think it was done here, you always lose. If you do it your way, you always win. Not always, but Your Honor, what the court said is... I'm being very serious now. What is this balancing test? It would have to look at at least a couple of things, Your Honor. And I think a good example showing it is Brunseth versus Marriott Corp, which is 868 F SUP 333, a case from the DDC here. There, a gubernatorial candidate had a story published about him about an affair. He lost the election. He sued and was trying to find out employees at Marriott who were the sources for this story. And the court looked at centrality, it looked at exhaustion, but then it also said, finally, plaintiff has demonstrated no overwhelming or compelling societal interest in overcoming the presumption favoring First Amendment protections for a reporter's sources. What does that mean? This is not... The court would have to look at what interest is being advanced by the litigation. Overwhelming societal interest. I really, I'm not sure I get... What does that mean? That sounds like your preferred approach is always in the societal interest and you always win. It's not always, Your Honor. Tell me what that means. It would mean that the case would have some plaintiff's case, some more broader public interest supporting it. Like what? Like in Brunseth, what the court pointed to is election integrity. If it had been a case about challenging an election result, asserting that there was some fraud in the election, there is a broad societal interest in that case. So that is something following Zerilli before Lee. This is the way the district courts understood Zerilli in Brunseth, the court looked to that. The court also looked to whether or not the plaintiff had a realistic prospect of success on summary judgment. In Brunseth, the court pointed out that Marriott there had explained to the court that the plaintiff is likely going to lose on summary judgment for causation. And that also has to be part of the balancing because that's just common sense. Zerilli went to great length to explain that there is a systemic societal cost every time a confidential source is disclosed because it chills the flow of information to the press and impairs the ability of the press to fulfill its function. You know, it's interesting you mentioned this likelihood of success on the merit should be, in your view, part of the balance. That's a very obvious notion if the court meant to employ it. We never have. Your Honor. That's a very obvious notion. Zerilli, Lee, what has said that, that we meant to say that, that if the judge looking at it thinks there's no way this person is going to win on the merits and therefore I'm going to balance them out of existence. That is not said in either one of those cases. In Zerilli, Your Honor, I think it is implied in the instruction to conduct a balancing. And here, Your Honor, I would point out. So you wouldn't imply that, at least I don't think most of my colleagues would imply that would say it. If we meant to say that likelihood of success on the merits will be dispositive. We don't think you can win this. We're going to peek at the merits. We're not going to stay where we are. We're going to keep looking. And we don't think you can win. You're gone. Neither case says that. There was no need for the court to do it in Zerilli, Your Honor. No, no. We're talking about what test the court was setting forth. If that's the test that is being set forth, the court surely would have said that. What the court did say was there had to be a balancing interest. And if you are balancing the interest, you know you're going to cause harm on the First Amendment side by ordering disclosure. What is the interest on the other side? If the interest on the other side is a case that's about to collapse at summary judgment, that necessarily affects the way that interest can weigh in. I hear how you're reasoning out. I'm just telling you the way I think judges think, at least some of us think, if that is a crucial consideration, I can't imagine how it's not stated. It wasn't stated in Zerilli, Your Honor, because the court could basically get off the train at you haven't exhausted alternatives. And it didn't need to go fleshing out every detail that goes into the balancing test. But other courts that apply the same sort of balancing repeatedly have understood that you do have to look ahead to the merits. That's what the First Circuit did in Bruno and Stillman v. Globe newspaper. It's in our briefs. It expressly said that before ordering disclosure, you have to look to see if the plaintiff is going to establish a jury issue on all the elements of their claim at summary judgment. Other state courts confronted with the same issue about First Amendment protections for reporter sources. The Atlanta Constitution Journal v. Jewel case cited in our brief. The court specifically said the analysis you have to do on this balancing may essentially be like summary judgment, but that's what you have to do because it would be completely irrational to incur the systemic societal cost of disclosing confidential sources just for a case to collapse on summary judgment or to turn out that it's a hundred dollar case. That doesn't make sense. That's inherent. That's baked into the idea of a balancing test that the court set out in Zirilli. And as to Lee, your honor, the briefing in Lee was very diffuse because there were multiple different reporters with multiple different stories. There was a lot of different arguments about is this central to the case or not. They exhausted as to this reporter sources and that. And it wasn't presented as being about what is there more to do in Zirilli, really until the petition for rehearing stage. And that's why Judge Rogers, who was on the panel, voted for rehearing. And as Judge Tatel pointed out, look, Zirilli said the First Amendment privilege has to prevail in almost every case. You have to have an extraordinary showing to overcome it. If you reduce Zirilli to the arid factors of centrality and exhaustion, then the requirements of the most trivial litigation would trump core First Amendment values. And why wouldn't you consider those two factors to be burdensome? I mean, if you look at centrality from the standpoint of your case could be won or lose, lost on the identity of the source. And then, of course, exhaustion would be more than just, you know, naming a few people, taking a few depositions, but really going far out to the 40 or however many plus witnesses that you could put your arms around. And then the court looking at that as part of that burdensome balance. Well, Your Honor, I think that the centrality and exhaustion, again, especially in a Privacy Act case, which Zirilli was also a Privacy Act case, centrality is always met because the identity of the source is always central to the Privacy Act plaintiff's case. But I'm taking it a step further saying fall and rise on it. I somehow feel that that is a little more significant than just oh, I just need that particular reporter. Well, Your Honor, in a Privacy Act case, the laws that has developed is that in order to establish the intent or willfulness of the leak, you need to know the identity of the leaker. So the case rises or falls. If the plaintiff cannot get the identity of the source, the Privacy Act case is over here. So it does in every Privacy Act case that level of centrality is met necessarily. And so what it turns Zirilli into is just in every Privacy Act case, doesn't matter how small the case, doesn't matter if it looks like it's likely going to fail on summary judgment for other reasons, you always eventually get access to the reporter's sources. And that's just diametrically opposed to what the Zirilli court said. The Zirilli court said an interest sufficiently compelling to overcome the First Amendment. It can't be that every single Privacy Act case automatically counts because Zirilli itself was a Privacy Act case. It's already baked into Zirilli when the court was explaining this very heavy weighting in favor of the First Amendment that Privacy Act cases aren't that special. Again, to Judge Edwards' point, if the court had thought every Privacy Act case is that special, it would have said something like that in Zirilli. And it plainly didn't. It said the opposite. What it said in Zirilli is it's going to be very rare that you can ever show an interest that's worth overcoming the First Amendment protection for confidential. I've got two other areas I want to explore with you. One is when you're crafting essentially the definition of the press and we're now in this social media age where people hide behind Twitter, you know, you hide behind other social media outlets. Who are you really protecting? How are we defining press now? Well, Your Honor, I think that's a question that the court would have to address on a case-by-case basis going forward. But here, in this case, we're talking very traditional media. This was a story that was done when Ms. Herridge was at Fox News and the stories appeared on Fox News. And then you mentioned the federal common law privilege as to whether or not we should go forward in that regard. And in the case of Jaffe v. Redmond, it was indicated that the testimonial privileges are evolutionary. Do you see anything having changed or being more nuanced now to where we're now there where we would actually try to develop a federal common law privilege? Well, Your Honor, I think since the time of Zirilli, more states have adopted, and that's what the federal courts look to in terms of the development of the common law. Forty-nine states, plus the District of Columbia, have some sort of reporter's privilege. Why isn't that enough? Well, because, Your Honor, it wouldn't apply in a case like this in federal court, the privacy case. It would only apply in state courts. And that's exactly why there shouldn't be such a disparity between the state court systems and the federal, where the state courts have all recognized that there's a need for this privilege. But they also have different dimensions to their particular elements of the law. They do have some different dimensions, but the core of it, Your Honor, that there is a First Amendment protection for, and many of those variations have to do with things like, is it a libel case or defamation case where the reporters are the defendant? That's not the case here. So that doesn't affect this situation. I think all 49 states and the District of Columbia have rules that would apply to protect the sources in this case. And so it is a situation where the law has developed in favor of the First Amendment protection. I mean, Your Honor, you're trying to run away from centrality and exhaustion, which is how Zerilli was applied in Lee. And you're saying, well, the earlier decisions control the later one. And you're asking us to focus on some very broad and arguably loose language from the first half of Zerilli, which is later qualified. But I mean, if we're going to do that, why don't we go all the way back to Cary and Brandsburg and Garland? And if you look at those cases, the First Amendment interest is set off against a very powerful competing interest that courts have a right to every person's evidence. And the general rule is that journalists, like every other citizen, have to testify. And that's a categorical rule in criminal cases. And going back to Garland, it's the rule whenever the information sought goes to the heart of the claim. Well, Your Honor, Brandsburg, I believe, is distinguishable because it's the criminal context. It was a grand jury subpoena. And that's what this court acknowledged. I mean, Cary was pre-Brandsburg. Zerilli was post-Brandsburg. And that's what the court in Zerilli recognized. I mean, your account of the First Amendment, I mean, Congress could criminalize Privacy Act violations, right? It wouldn't violate the First Amendment for Congress to criminalize Privacy Act violations, correct? I think that's correct, Your Honor. And if they did that, your client could be hauled before a grand jury and forced to divulge her source, regardless of the facts of the case. That's true, Your Honor. And if that's true, it's just hard to take too seriously this sweeping language that the First Amendment protecting reporters' ability to broadcast information that is unlawfully disclosed. It's like this hugely overarching value that has to prevail in all but the rarest of cases. Well, Your Honor, that is the language and the holding in Zerilli, that there must be a balancing of interests. If you ignore the second half of it. No, I don't think so, Your Honor. I think it's entirely compatible with the second half because all the second half... The balancing could be to decide how important the information is to resolve the case. It's not necessarily balancing to, for us to decide that one Privacy Act, one meritorious Privacy Act claim is more valuable than another because, you know, how sympathetic the plaintiffs look. Your Honor, I think Zerilli is very clear that it is talking about looking at interests at stake and the public interest it acknowledges. And it goes through a very specific discussion, why there is a public interest in protecting reporters' confidential sources, because that's essential for ensuring the flow of information to the press. So that is clearly something that there's a really court for this circuit acknowledged and says has to be protected. And then at five points, it's not a passing reference, it's not just flowery language. At five points, the court went on to point out the First Amendment privilege has to prevail in all but the most exceptional cases. It's going to be very rare that you can ever put an interest on the private side, the plaintiff's side of the balance that's going to overcome... Is there a public interest in protecting against the release of information that Congress says should not be disclosed? Your Honor... Is there a potential libel that flows from that? I mean, you're talking about libel, as you can understand, maybe there, but isn't there at least implicit, if not explicit, libel in some of these Privacy Act cases because someone has allegedly been burned by information that Congress said should not have been released? Well, Your Honor, that's something that very much distinguishes this case from earlier Privacy Act cases like Lee or Hatfield, where there were claims of defamation. There's never been any... No, no, no. I'm saying implicit defamation because I want to take you on your terms. It's a Privacy Act case, but undergirding it, we all know that the party who is involved in the dispute is saying, it's a Privacy Act case. I'm not bringing a libel action, but I've been libel. And Congress has said this... Let me just finish. Congress has said, we have decided as a legislator, this information should not be released. Your Honor, I think it's the case, whether it's the Privacy Act, whether it's some other sort of claim, wherever the law gives a potential plaintiff a cause of action, one could say that there has been a recognition, there is some public interest in vindicating... But you're saying it never can outweigh your notion of the First Amendment. No, Your Honor, not never, that there has to be a balancing, and the District Court here didn't do the balancing. So take the Grinseth case. What if this were a plaintiff who had found out that a reporter did a story on potential election interference, and the reporter seemed to have anonymous sources who knew something about stuffing ballots or something like that, and the candidate had lost the election, and the candidate was suing to challenge the election results and wanted to know from that reporter who were the sources who talked about ballot stuffing. There is a huge public interest that potentially could outweigh the First Amendment. That's the sort of situation the Grinseth Court suggested. That's the sort of analysis that Zerouli called for. You've got to actually look at what are the interests involved. And if I could... It seems like that's an argument that the Privacy Act is a bad or overbroad statute. Right. No, Your Honor, because Zerouli itself was a Privacy Act case. It is in Zerouli. Yeah, but we're struggling with your view of Zerouli as being as narrow or as broad as you're claiming it to be, because you're only reading part of the opinion. Well, with respect, Your Honor, all that the second part of the opinion says are here are some guidelines that can be used to guide the balancing. It doesn't say this is the definitive end of the balancing after these two factors, and that's what plaintiff is trying to say and what the District Court said here. And it leads to... This all leaves out Lee. I mean, I guess if I were in your shoes, I'd argue it this way too, but you're ignoring Lee. Lee does not talk about Zerouli the way you're talking about Zerouli, and normally we're better than that as members of this Court. If we think there's a clear balancing test from the case that we're relying on, we would say that. That's not the way Lee reads Zerouli. To the extent it does not read Zerouli that way, I think it's flatly incompatible with Zerouli, and that's why... Well, the reason to think that what you're saying is flatly inconsistent was what Zerouli said. Your Honor, I think the language in Zerouli is very plain in saying that the First Amendment privilege has to prevail, and there has to be an actual balancing. And logically, if you reduce Zerouli to centrality and exhaustion, it's 180 degrees different from what Zerouli said, because it means anytime a litigant actually needs the information for their case, the litigant's interest always prevails. That's the rule that the District Court applied. That's the rule the plaintiffs are advocating here. And you cannot reconcile a rule that says a litigant's interest always trumps the First Amendment with what this Court said in Zerouli, because this Court said exactly the opposite. The First Amendment has to prevail in almost every case. And there has been nothing put in the balance here to show that the plaintiff's case in this case presents sufficient interest to overcome the First Amendment. If I could just briefly touch on three points, Your Honor, where the weaknesses are that show that there's not much in the balance on the plaintiff's side of the case. The first is, she's not going to be able to show damages, because her damages come from DOD cutting off money for her school on national security grants, and publicly announcing that it was doing it. I think probably all of them, Your Honor, because to the extent that— The private photographs. Well, it would be— There's a statute that provides statutory damages for the parties that are hard to quantify. I believe, Your Honor, that the statutory damages only kick in if the plaintiff has actually proved damage, some monetary damage. That's Doe versus Chau, 540 U.S. 614. So the plaintiff would have to show actual monetary damages to be able to then become entitled to the $1,000 statutory minimum. So the fact that DOD made an independent decision based on a fact-finding record, and that's what I can't discuss here, that that is an independent agency action. And this whole case, this Privacy Act case, is an attempt to make a collateral attack on that DOD decision, which plaintiff never challenged. She didn't go to court to try to get review on the DOD decision cutting off her funds. She didn't challenge the factual findings in court under the APA to seek review. She forewent all that, and instead sued under the Privacy Act to try to recover under the Privacy Act the money that DOD cut off for national security reasons. That's what this case basically is. And the bulk of what plaintiff is pursuing is trying to recover the very money that DOD cut off on national security grounds without ever trying to challenge DOD's findings. The second big factor, Your Honor, is, as the court just suggested, that almost all the information that plaintiff claims was damaging to her did not come from Privacy Act disclosures. It was available from other sources. So, remember, in the stories, Ms. Harridge was interviewing an FBI informant, and he was the one who explained on camera that plaintiff admitted she was a colonel in the PLA, that her university was catering to U.S. military members, it was gathering lots of information on them, and he said that it's stored in a way that it's accessible from China. That was all from sources that had nothing to do with a Privacy Act disclosure. In addition to that, the FBI affidavit that was used when her premises were searched was a public document in EDVA. Plaintiffs haven't even challenged on this appeal that that was a public document. And everything in that FBI affidavit, which had transcriptions from the recordings where an informant wearing a wire had plaintiff admitting on tape she was a colonel in the PLA, and it had a description of all of the immigration forms where the plaintiff lied about her past in the PLA, and additional instances in which she lied to officers about her connections with the PLA. All that's in the FBI affidavit, and plaintiffs are not disputing that that was all public information. So, basically, it comes down to the photo. That's right. This case, what could potentially be shown is the photos of plaintiff in her uniform as a colonel in the PLA What is the damage? If anything, it can be proved separately from that. And then, finally, Your Honor, there is the serious risk that also ought to be weighed in the balance under Zerilli. Given DOD's findings, which again, I can't go into in the open session, but there are very specific findings, it raises the serious risk that the plaintiff here was actually involved in making information about U.S. military members accessible in a way to the Communist Party of China. Chinese Communist Party, the PRC. And this Privacy Act litigation is an effort to recover funding for that activity. And that's also something that ought to be weighed in the balance in Zerilli. And this is, again, Your Honor, it's in the Grinstead case. It's in the First Circuit decision that other courts have recognized when you are confronted with this attempt to get a reporter's confidential sources. It's essential to weigh in the balance, to take into account, what is this going to look like on summary judgment? And what is this case actually trying to vindicate? And those are things that courts are taking. It really did not compel the disclosure because the exhaustion requirement was not met. Correct. And I say that because you keep seeming to go with the premise that if we only have centrality and exhaustion, a plaintiff is always going to the threshold in that regard. But if you assume that over the course of the many depositions, the many interrogatories that people are telling the truth, it seems like this information that someone is seeking, meaning the plaintiff, will come out. Yes, but that's why I say, Your Honor, it means the plaintiff would always prevail eventually. It's just an exhaustion requirement. And there will come a time in every case. But I'm saying we wouldn't have to leak the source, your source, that they would get the information at some point throughout all that process of exhaustion without necessarily having to have you reveal your source. In theory, it could happen that way. The way it has typically happened is that in the Lee case, in the Hatfield case, courts find that there was exhaustion. No one has admitted it. There's no way to get it except going to the reporter. And that's the way it ends up happening, is that it's trying to force the reporter to disclose. So that is as a practical matter where this all leads. Okay, fair enough. Judge Edward. Okay, we'll discuss the balancing more specifically. Thank you. Mr. Phillips. Good morning, Your Honors. May it please the court. I want to start with Judge Edward's question to Mr. Philbin about what is this balancing that Ms. Herridge is suggesting that the district court erred by failing to do. In this case, Ms. Herridge argues that the district court erred as a matter of law by failing to consider things like the potential amount of damages that Chen might be able to recover in her case, the risk that Chen may have passed information to a foreign government, whether the government's conduct towards Chen meets some threshold level of egregiousness, the general importance of confidential sources to the national security. That kind of broad balancing, unmoored from really any factors or guidelines at all, it's a free-for-all grab bag that the district court can consider any argument that the non-party reporter throws at the wall that just cannot be squared with the plain language of Zerilli and Lee. As Your Honors have already noted, it is true that the Zerilli opinion begins with a statement about a broad general purpose to balance the plaintiff's interest in disclosure against the reporter's interest in protecting her confidential source. And Zerilli was actually paraphrasing Carrie V. Hume with that. What Herridge ignores is that Zerilli did not stop there. It continued by explicitly stating... There's a little bit more in the first half, right? There's that statement in a Privacy Act case that the privilege must prevail in all but the most exceptional cases. Yeah. And suppose we think that first part of Zerilli, including that statement, is accurately states current law of the circuit. How would we operationalize that? Yeah. So, I mean, I would... Other than this... As you can imagine... ... surface grab bag thing that we're all struggling with. But Mr. Philbin is right that the two-factor test will lead to disclosure of sources in Privacy Act case. So a couple points on that, Your Honor. As you can imagine, I'd strongly disagree with the premise that that broad general statement is the state of the law in the circuit. We'd have to completely ignore Lee, which we can't do.  I will humor you. Ms. Herridge below and before this court has sought to portray the centrality and exhaustion requirements, to use a phrase that the district court used in another context, is basically a toll booth that can be passed with loose change. They're just easy requirements to meet in any case. As to centrality, I think it's important to consider that this test is not specific to a Privacy Act case. This test applies across civil cases. So I would argue that the fact that, and it's true, in a Privacy Act case, centrality is generally going to be established because the identity of the leaker, due to the mens rea requirement of the Privacy Act, is absolutely crucial to the plaintiff's case. But I would argue that is a feature, not a bug, of the test. In the mine run of civil cases, information in a reporter's is much more likely to fall under the rubric of, nice to have, would be great to know, I'd take it if I could get it, but it's not absolutely crucial to my case. There's actually only two circumstances that I've been able to find in this circuit where, you know, essentially the centrality factor is going to be satisfied. It's the Privacy Act cases and then looking to Carey v. Hume, which was a libel case. And it was a public figure case, so the plaintiff had to establish actual malice. And that's where this court first explicated this centrality and exhaustion test. And the court in that case had no trouble saying it's absolutely central to the plaintiff's claim because the reporter in that, defendant reporter in that case, was claiming that he had information from a source that negated actual malice. And so the plaintiff needed to know the identity of that source in order to prove his case. That would be a great response if Zirilli itself were not a Privacy Act case. Zirilli itself is a Privacy Act case. So it doesn't, you know. Well, but it wasn't limiting the test to Privacy Act cases, is my point. And I think that. No, but this statement that the privilege almost always prevails was made in a Privacy Act case. That's fair, Your Honor. But then let's go to the second requirement. Zirilli itself, the same opinion, referred to the exhaustion requirement as, quote unquote, clearly very substantial. And it is. Zirilli suggested that a plaintiff might have to take 60 depositions before exhausting reasonable alternative avenues of discovering the leaker's identity. In this case, you know, the district court referred to Dr. Chen as having pounded the pavement to uncover the identity of the leaker. She spent years. This case was filed in December of 2018. The subpoena to Catherine Herridge wasn't issued until the summer of 2022. So Dr. Chen spent years trying to fulfill that exhaustion requirement. There are probably not very many plaintiffs who are going to have the resources and the fortitude to do what that exhaustion requirement requires. That alone, I think, makes this an exceptional case. And then Judge Shiles, as you pointed out, you know, if you do what Dr. Chen did and got testimony from 40 different government officials who all denied being the leaker, you know, again, in the mine run of cases, you would think that if you're going to take dozens of depositions of folks who had access to this information, you're probably going to uncover the identity of the leaker and not have to seek it from the reporter. As Judge Shiles also pointed out, not all plaintiffs satisfy the exhaustion requirement. Zerilli did not. There was the Linda Tripp case from the district court in 2003, sorry. She was denied discovery on the basis of having failed to exhaust alternative avenues. So the broader point being, Your Honor, that I think the test, by design, is difficult for a plaintiff to meet, particularly as to the exhaustion requirement. And that does make this case an exceptional case. The Privacy Act was passed in the mid-70s. This is, by my count, the third time that this court has been dealing with, on appeal, a compelled disclosure from a reporter in a Privacy Act case. Zerilli Lee in this case in, you know, over 40 years. Turning back to Zerilli, the language I wanted to highlight for the court is, quote, and this is after that broad, generalized statement about we want to balance, quote, a number of more precise guidelines can be applied to determine how the balance should be struck in a particular case, end quote. The court then identified centrality, exhaustion, and whether the reporter is a party, which is not generally relevant in these types of cases because the reporter is usually a non-party. Immediately after delineating those precise guidelines, the very next paragraph of the opinion, the court begins its analysis of the qualified privilege question in that case by saying, quote, applying these guidelines to the facts of the case before us, end quote, and then continuing. And as we've discussed, the court found centrality but did not find exhaustion. But if you have centrality and exhaustion as kind of your two markers, that seems to go more toward the private interest. How would we be considering the public interest? I would disagree with that, Your Honor. I actually think that, I think that both elements of the test are frankly more geared towards the public interest. If the public interest is protecting, you know, a generalized protection of reporters' confidential sources, the centrality requirement ensures that a plaintiff's not going to get that information, again, unless it's crucial to his case. The case rises and falls with the information that the reporter has. And then again, the exhaustion requirement requires the plaintiff to go to great lengths to try to obtain that information from anywhere else before seeking it from the reporter. So I would actually argue the opposite, that I think both factors of the test are protective of the privilege. So are you suggesting that we just stick with centrality and exhaustion, or is it possible to have an opinion that says we're not prohibiting the balancing should a district court want to go further? I think a fair reading of Zirilli and Lee is that centrality and exhaustion is it. You know, Lee especially was crystal clear on saying, and the quote from that case is, Zirilli cites Kerry for the two guidelines, the two guidelines to be used to determine when a non-party reporter has to provide the identity of her source in a Privacy Act case. I just, you know, I suppose you could argue that district courts are permitted to consider, you know, whether Mercury is in retrograde, right? Like, just because the opinion doesn't say you can't, but that's not a fair reading of Zirilli and Lee. It's also kind of irrelevant to this case. So Ms. Harish has argued that this court's review should be de novo because she argues that the court applied the incorrect legal standard. What this court said in Lee very clearly is that when it's a question of whether the court balanced correctly, you know, reached the right result after applying the correct test, then review is abuse of discretion, which is a really difficult standard and one that I don't think Harish even argues here. She'd have to show, you know, essentially arbitrary and capricious conduct by the district court. So if this court holds that, you know, not that the district court was required to conduct that balancing, but simply that it was permitted to do so, well then I think the district court was within its discretion in saying I'm not going to do that. And indeed, both in the order denying the motion quash and the contempt order, the district court addressed every single argument that Ms. Harish makes to this court and explained in great detail why it thinks those things are, you know, either irrelevant or not persuasive in terms of having much weight in a balancing analysis. With respect to the common law reporters privilege where you've got the 49 states that are going toward that privilege, what do you say with respect to offering a federal common law privilege? Yeah, so a couple things on that, your honor. One, I think there's a little bit of sleight of hand going on with the 49 states recognizing a reporter's privilege. The relevant question is not is there a consensus that there should be some protection for non-party reporters against revealing their sources. The circuit has that. That's the qualified privilege test from Zerilli and Lee. The real question is, is there a consensus around a qualified test that includes not just centrality and exhaustion, but also requires this broad and amorphous balancing approach. And, you know, even I invite you to look at Ms. Harish's principle brief. She has an addendum to her brief at the end that lays out these in high-level detail the different shield laws or reporter privileges in the states. What that addendum itself shows is they're all over the place. I think she claims that something like 22 states do require this sort of broad balancing approach. Her chart also shows that at least 13 don't that have a qualified privilege. I actually could direct you to some statutes in certain states. So some of these states, it's, you know, it's by statute. Some of these states, it's court order. But there are states that use the exact same test as this circuit already uses from Zerilli and Lee. And I'll point you to the, these are statutory reporter shield laws in Georgia, North Carolina, South Carolina, and Oklahoma. All have statutory journal shield laws. All of them are overcome by centrality and exhaustion. No balancing at all. That's the case in Michigan as well. That one's not statutory. It's by court order. But all that is to say that there is no consensus among the states. There's no, they can't even say that a majority of states utilize the test that they're arguing this court should adopt as common law. The other thing I would say on the common law privileges, I would, I would just urge this court to, you know, hear the words of Judge Cooper in this case below, Judge Collier in the Lee District Court case, and Judge Walton in the Hatfield case, all of whom addressed the question directly. Should, should there be a common law privilege that includes this amorphous kind of freeform balancing approach that Heritage wants us to use? Emphatically, all of those district court judges are, you know, crying out to this court, please don't make us do that. We don't think it's workable. We don't think we're in the right position to be doing that. We don't want to make value judgments about, you know, whether a given story is newsworthy or not, or, you know, how worthy a given plaintiff is of having a right, a right of relief that the law affords to. So I think, you they've used language like extremely problematic, inherently unworkable. So, you know, even putting aside the lack of consensus, and I'd add that, you know, no federal court has, has, you know, announced the common law privilege that Ms. Heritage asked this court to. This court's had multiple opportunities to, to announce it before and has declined. So, you know, for all those reasons, I would argue that, you know, putting aside whether this court can enact a common law privilege, it should not for the, for the very practical reasons given by the district court judges in this circuit. Give me a moment, Your Honors. Oh, I want to also address the point that Mr. Philbin made about Zerilli and Lee, and they have kind of this drive-by argument in their reply brief that, well, if Lee is inconsistent with Zerilli, then this court can just toss Lee out the window and ignore it. First of all, I don't believe that Zerilli and Lee are inconsistent. You know, the Lee opinion on its face purports to be applying and reaffirming Zerilli, not in any way questioning or overruling it. But I also want to just direct this court to the, the rule from Citizens for Responsibility and Ethics in Washington, the FEC, it's 993 F3rd 880, this court from 2021. What this court said is not only can one panel not overrule another, we're all familiar with the law of the circuit doctrine, but, quote, when faced with a claim of conflicting precedents, we must whenever possible harmonize later decisions with existing authorities to avoid creating unnecessary conflicts. I would submit to the between precedents. I think what, what Herridge is asking you to do would absolutely require you to do that. And, and because Zerilli and Lee are, are very much in perfect harmony, there's, there's just no need to do that. I see that I'm out of time, but I'm happy to address any further questions that the court has. Okay. Thank you. Thank you. Thank you, Your Honor. Very briefly on rebuttal, just a few points. One is that I think that one thing the court pointed out in the colloquy with Mr. Phillips is really central, and that is Zerilli was a Privacy Act case. It was in the context of a Privacy Act case that the court repeatedly said that an interest sufficiently compelling to overcome the First Amendment privilege is going to be rare, and the privilege has to prevail in most cases. In the ordinary case, the court said, the civil litigant's interest in disclosure must yield to the privilege. That applies to Privacy Act cases, and if the rule applied below, reducing it to centrality and exhaustion is the rule, then the plaintiff always gets the sources in a Privacy Act case eventually. If they do enough legwork first, they always get an order disclosing the source, and that is incompatible with Zerilli. It's flatly incompatible with Zerilli, and that's what Judge Tatel and then Judge Garland recognized in their dissents from the denial of rehearing on Bonk and Lee, that where it appeared that Lee reduced it to those factors, you can't reconcile that with Zerilli. That resonates with me in the abstract, but how do you answer your friend's point that here we are 40 years later with the third case? Well, Your Honor, I think part of what happens is that a lot of times these cases settle. That's what happened in Hatfield when there was another case in the district court where there was an order for disclosure, and the district court did not stay its own order. This court intervened to stay the disclosure order, but then the case settled, and in dismissing the case, the court went out of its way in the per curiam opinion to note this case raised close First Amendment questions, right? So the court reached out to stay it, and then sua sponte, rather gratuitously, pointed out that this raised serious First Amendment questions, and part of the reason that they come up only infrequently, Your Honor, is that there is a great pressure put on the media company that employs a journalist to come in and settle the Privacy Act case for the government to provide the deep pocket in order to protect the source, and the law shouldn't continue to develop that way. That's what happened in Hatfield. That's why it didn't come to this court, because there was a settlement, because there's so much pressure put on the media organization to protect the source, to ensure that the source won't get burned so that you won't have the effects on hobbling the ability of the press, but the cases don't get up to this court, and that's why it's critically important to revisit and clear up the rule in Cirilla, and that's why Judge Tatel and then Judge Garland and the others who joined them in voting for the re-hearing on Bach and Lee were pointing out if you change the ruling this way, you're flipping it 180 degrees and saying that the plaintiff in the Privacy Act case is always going to get the source, and that doesn't make sense. Mr. Phillips also made some points about the difficulty in doing this balancing or considering things. I would just point out again, Your Honor, if this court says there's no balancing, all you do is centrality and exhaustion, that'll be a square circuit conflict with Bruno and Stillman versus a Globe newspaper, where the First Circuit makes it very clear you've got to look and determine whether or not the plaintiff is going to establish a jury issue on all the elements of their case before you order forced disclosure, and other courts, the state courts that we've cited, other courts have relied on Cirilla across the country for this concept of balancing, and if this court now says no, actually it's not balancing, it's a mechanical two-factor test, it's going to be in conflict with all those cases that have relied on Cirilla, some of the state court cases we cite in our brief. Last point, Your Honor, very briefly in terms of a federal common law and what is the law in the 49 states now. So I have a different understanding for Mr. Phillips on this, as we explain in our 21 states there's an absolute privilege, so yeah, there's not balancing there because it's an absolute privilege, you never get the reporter's source, at least in certain circumstances for cases that are not libel cases, and in 22 states and the District of Columbia where the privilege is qualified, then overcoming the privilege requires not just centrality and exhaustion, but showing the balance of interests. So that's 21 absolute, 22 qualified with balancing, and even Mr. Phillips mentioned Georgia as a case where he says there wouldn't be this balancing. In fact, the case we cite in our brief, the Atlanta Constitution Journal versus Jewell case, precisely a case about ordering disclosure of sources, and the intermediate appellate Georgia court there said very specifically, you've got to look at what is the plaintiff's case going to look like, even if that means looking at briefing that's like partial summary judgment, that's what you have to do before you order disclosure, because it would be totally irrational to burn the sources, have that effect on the First Amendment and the press, for a case that's about to collapse. Okay, thank you Mr. Philbin. We'll take a brief recess while the CSOs secure the courtroom, and we'll be back with you all in a closed session.
judges: Katsas; Childs; Edwards